No. 18,746.

BLANCHE CRECELIUS, *Appellee,* v. THE ATCHISON, TO-PEKA & SANTA FE RAILWAY COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. NEGLIGENCE — *Frightening Horse* — *Unnecessary Noises and Discharges of Steam by Engine.* While a railroad company is ordinarily not liable for injuries resulting from horses be-coming frightened at the escape of steam and the usual noises necessarily incident to the operation of trains in an ordinarily careful manner, it is liable for the injuries re-sulting from the unusual and unnecessary discharge of steam or the making of unusual and unnecessary noises near to street crossings reasonably calculated to frighten horses that are gentle.

2. SAME—*Lawful Act May be Negligently Done.* It is no excuse that the act which causes an injury may be lawful in itself or that it was done in the exercise of a lawful right if the injury resulted from the negligent manner in which it was done.

3. SAME—*Evidence Sustains the Verdict.* The testimony exam-ined and held to be sufficient to sustain the verdict, and no material error is found in the instructions given by the court.

Appeal from Leavenworth district court; JAMES H. WENDORFF, judge. Opinion filed April 11, 1914. Affirmed.

*William R. Smith, Owen J. Wood,* and *Alfred A. Scott,* all of Topeka, for the appellant.

*Lee Bond,* and *M. N. McNaughton,* both of Leavenworth, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: In this action the appellee, Blanche Crecelius, recovered damages from the appellant, The Atchison, Topeka & Santa Fe Railway Company, for injuries resulting from the negligent operation of a switch engine by appellant's employees. Cherokee street in the city of Leavenworth is one of the main thoroughfares and runs from east to west, and is crosed diagonally by the tracks of appellant, which cross that street in a northeasterly to southwesterly direction. Leading up to the crossing on Cherokee street from the east there is an ascending grade, the grade beginning at a point about twenty-five feet distant from the east rail of the east, or switch, track. About twenty-five feet east of the east rail of this track, and on the north side of Cherokee street, there is located an office and factory building fronting two hundred and eighty-four feet on Cherokee street. From a point in the middle of Cherokee street, and thirty-eight feet east of the east rail of the switch track, a view can be obtained of appellant's tracks toward the north to a distance of about one hundred and ten feet. On the evening of May 15, 1911, at about six o'clock, appellee, in company with two others, was driving westerly on Cherokee street, and had approached to within about twenty-five feet of the east rail of the switch track, when the horse became frightened at a switch engine crossing the street on the main track, and which was pushing four box cars across that street, causing

Crecelius v. Railway Co.

the horse, which was shown to be gentle, to turn suddenly, overturning the buggy and throwing appellee out and seriously injuring her. In her petition she alleged that appellant's employees in charge of the engine negligently and unnecessarily permitted steam cocks on the engine to be open and emitting large volumes of steam as it crossed the street; that appellant negligently failed to give any warning of the approach of the train; that the train was run across the street at an excessive rate of speed, and that appellant negligently failed to provide any flagman or watchman at the crossing as it was required to do. The answer of the appellant consisted of a general denial and a charge of contributory negligence against appellee. At the trial the testimony of appellee tended to show that she, with two others in the buggy, approached the crossing, keeping a lookout for cars; that there are buildings which obscure the view on the side of the track where she was approaching; that when she went within five to ten feet of the switch track the engine and cars, approaching on the main track, crossed rapidly without warning; that the horse did not frighten at the box cars as they were pushed ahead of the engine, but that the steam cocks of the engine were open and ejecting large volumes of steam, which were thrown about twenty-five feet and enveloped the horse, frightening it and causing the appellee to be thrown out and injured. Appellant offered testimony to the effect that the steam cocks were not open; that an undue amount of steam was not escaping; that a brakeman was upon the top of the forward box car keeping a lookout, and saw no one approaching the crossing. The jury found in favor of appellee, awarding her damages in the sum of $3750 and returning a number of answers to special questions.

It is first contended that the evidence and findings do not show negligence on the part of appellant, but do show contributory negligence of the appellee. The

failure of the appellant to keep a flagman and maintain and operate gates at the crossing was taken out of the case as a ground of negligence by an instruction of the court to the effect that the city ordinance did not require these. The principal grounds of negligence were that the engineer allowed the cylinder cocks to remain open as the engine crossed the street, ejecting large volumes of steam and making unnecessary noises, and also running the engine at an unwarranted rate of speed. It is insisted that the evidence does not show that the steam cocks were open or that steam was being unnecessarily emitted or noises needlessly made. There was testimony to the effect that the valves were open and that steam was thrown a great distance from the engine. Aside from the testimony of appellee and those accompanying her that steam was thrown a distance of twenty-five feet, there is the testimony of a witness who drove up on the opposite side of the engine to a point from twenty to thirty feet away from the track, that the steam cocks were open and that steam was thrown over his horse and made an unusual noise. No special findings were asked as to this feature of the case, but in view of the general verdict it must be held, under the testimony offered, that the engineer allowed the cocks to remain open, ejecting steam a distance of twenty-five feet, making unnecessary and frightening noises while he was crossing the street, and that too while he could have seen that appellee and others were waiting near the crossing for the passing of the engine. He admits that there was no necessity for the opening of the valves of the engine while it was crossing the street. It is true, as contended by appellant, that the right to use engines for the operation of railroads includes the right to use steam, and that in an ordinary careful use of an engine some steam will necessarily escape and some noise will necessarily be made. It is true, too, that the emission of steam is not in itself an

act of negligence, and that a railroad company is not liable where horses take fright at the necessary escape of steam or the making of the usual noises accompanying a careful and necessary use of an engine. However, it may be liable for injuries caused by permitting the careless and needless exhaust of steam and the making of unnecessary noises in operating its trains. A negligent exercise of a right or the negligent performance of a duty which causes injury can not be justified. It is no excuse that an act of appellant which causes an injury was in itself lawful, or might be done in the exercise of a legal right, if the injury arose from the doing of the thing in a negligent manner and without regard to the rights of others. (*Culp v. A. & N. Rld. Co.*, 17 Kan. 475; *Railway Co. v. Bailey,* 66 Kan. 115, 71 Pac. 246; 2 Thompson's Commentaries on the Law of Negligence, § 1922; 7 Thompson's Commentaries on the Law of Negligence, White's Supplement, § 1922; 2 Shearman and Redfield on the Law of Negligence, 6th ed., § 426.)

There is a finding to the effect that appellant was operating its train in the usual and ordinary manner at the time of the accident, but it is plain from the other findings and the verdict that this one does not relate to the opening of the steam cocks and the ejecting of steam for a distance of twenty-five feet. Such action at a street crossing, even if usual, was unnecessary and negligent.

It is contended that appellee was guilty of contributory negligence in driving so close to the track, and that the cars which the engine was pushing must have been on the crossing at the time appellee drove up to the track. The buildings, as we have seen, obscured the view of the track to persons approaching from the east. It was found that if appellee had stopped and looked up the track at a point thirty-eight feet east of the east rail, she could only have seen the train a distance of one hundred and ten feet. According to the

finding, she did stop twenty-five feet from the main track, and when she reached that point she was able to see the engine about two hundred feet away. There is no finding as to the speed of the train, but there was testimony that it was going rapidly, and one witness said it was going faster than he could run. An ordinance of the city limits the speed of engines and trains within the corporate limits to a rate of five miles an hour. The appellant prepared the special interrogatories, but did not submit any as to contributory negligence of the appellee, and the general verdict is, in effect, a finding that she was not negligent. There is some confusion in the testimony in regard to distances, as some of the witnesses seem to be speaking of the distance to the switch track while others are evidently referring to the distance to the main track. There is, likewise, indefiniteness as to whether they are speaking of the distance to the head of the horse or to the appellee in the buggy. In view of the verdict and the testimony, it can not be said that the appellee was guilty of contributory negligence.

Complaint is made of an instruction in which the court referred to the degrees of negligence, remarking that if the negligence of the appellant was the immediate cause of the injury, the fact that the negligence of appellee contributed only in a remote degree would not defeat a recovery. In other instructions the court advised the jury that it was the duty of appellee to use her sight and hearing to ascertain whether cars were about to pass, before she attempted to cross the track, and if she did ascertain the fact and still drove up so near the track that the engine and train frightened the horse, or if driving too close to the track contributed to the fright of the horse, she could not recover. This rule was in effect stated in three of the instructions. While the division of negligence into degrees is impractical and improper (*Railway Co. v. Walters*, 78 Kan. 39, 96 Pac. 346), it is quite evident that no preju-

dice could have resulted from the expression as used by the court to which objection has been made (*Sawyer v. Sauer,* 10 Kan. 466; *U. P. Rly. Co. v. Young,* 19 Kan. 488; *K. P. Rly. Co. v. Peavey,* 29 Kan. 169, 44 Am. Rep. 630; *A. T. & S. F. Rld. Co. v. Hughes,* 55 Kan. 491, 40 Pac. 919).

We find no error in the instruction to the effect that it was the duty of the trainmen to use caution to avoid emitting an unnecessary amount of steam or the making of unnecessary noises when they approached the crossing, if they saw that appellee and her horse were near the track. The testimony justified the submission of the instruction.

The judgment of the district court will be affirmed.